139 Ariz. 170 (1984)
677 P.2d 943
In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. J-92130.
No. 1 CA-JUV 222.
Court of Appeals of Arizona, Division 1, Department C.
January 19, 1984.
Review Denied February 28, 1984.
*171 Thomas E. Collins, Maricopa County Atty. by Sandra L. Janzen, Deputy County Atty., Phoenix, for appellee.
Ross P. Lee, Maricopa County Public Defender by Richard A. Rice, Deputy Public Defender, Phoenix, for appellant.
OPINION
OGG, Judge.
Effective July 27, 1983, A.R.S. § 8-241(C) was amended to authorize the juvenile court, when committing a delinquent child to the Department of Corrections, to also impose a monetary assessment and to order restitution. The question presented in this appeal is whether this amendment to the statute operates as an ex post facto law when applied to acts which occurred before its effective date. We find that it does and therefore reverse that portion of the trial court's order dated August 4, 1983 which imposed a monetary assessment in the amount of $100.00 and restitution in the amount of $100.00. We affirm that portion of the order which committed appellant to the Department of Corrections.
Based upon an act committed on July 5, 1983, the trial court ordered that appellant be committed to the Department of Corrections until the age of 18 or until sooner released in accordance with law. Additionally, over appellant's objection, the court applied the newly effective amendment to A.R.S. § 8-241(C) and ordered the appellant to pay restitution in the amount of $100.00 and also imposed a monetary assessment of $100.00. Both were to be paid on or before April 24, 1984, appellant's eighteenth birthday.
Appellant filed a timely appeal arguing that the retroactive application of the statute operated as an ex post facto law in violation of art. 1, §§ 9 and 10 of the United States Constitution and art. 2, § 25 of the Arizona Constitution. In response, the state admits that the statute was applied retroactively but argues that the statute does not violate the prohibition against ex post facto laws because it is not "penal" in nature, i.e., it does not increase punishment in the criminal law context in light of the juvenile court system's focus on rehabilitation rather than "punishment".
Pursuant to the Arizona Constitution, art. VI, § 15, the powers of the juvenile court to control delinquent children are limited to those provided by law. In the Matter of the Appeal in Maricopa County Juvenile Action No. J-85871, 120 Ariz. 154, 584 P.2d 618 (App. 1978). Thus, to place the issue on appeal in proper perspective, we feel that it is first necessary to review the legislative authority given to the juvenile court to deal with the disposition and commitment of delinquent children.
A.R.S. § 8-241 is the statutory authority relating to the disposition and commitment of delinquent children. Prior to 1979, the statute contained no provision by which the juvenile court could order a juvenile to make restitution to a victim or to pay a penalty or assessment. In 1979, A.R.S. § 8-241(C) was amended to provide that the court "may" require a delinquent child to pay restitution to the victim and/or to pay a monetary "penalty" if the court determined that such penalty was in aid of rehabilitation. However, this discretionary authority was limited to cases where the juvenile was not institutionalized but was placed on probation in the custody of his parents, the probation department, a reputable *172 citizen or the juvenile's maternal or paternal relatives. The statute specifically excluded authority to order restitution or to impose a monetary penalty if the child was committed to the Department of Corrections or to a private agency or institution.[1]
The 1983 amendment to A.R.S. § 8-241(C), which is the subject of this litigation, extended the juvenile court's power by permitting the court to order restitution and a monetary assessment when a juvenile was committed to the Department of Corrections or to a private agency or institution. Additionally, the discretionary word "may" was changed to "shall" following the legislative intent to make restitution and/or a monetary assessment mandatory where appropriate.[2] With the statutory history in mind, we now turn to the arguments presented on appeal.
Appellant's claim that the statute operates as an ex post facto law is not complex. He cites Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), for the two-pronged test used in determining whether a statute constitutes an ex post facto violation. First, the statute must be retrospective. Second, the statute must disadvantage the offender. Here, it is not contested that the statute is being applied retroactively. As to the second prong, appellant argues that because the statute now requires the imposition of an assessment and restitution in addition to commitment to the Department of Corrections, it operates to the juvenile's financial disadvantage. He concludes, therefore, that the statute is being applied unconstitutionally.
The state acknowledges that the two-pronged test of Weaver is normally the appropriate test to be applied in determining whether a law is ex post facto. Nevertheless, it rejects appellant's application of Weaver as too simplistic in light of the unique procedures involved in the juvenile court setting and particularly, the focus on rehabilitation in the dispositional phase. In substance, the state claims that the amendment providing for a monetary assessment and/or restitution is not "punitive" in nature, but is merely part of Arizona's scheme of rehabilitation of juveniles. From this premise, the state concludes that the statute is not subject to the ex post facto clauses of the United States and Arizona Constitutions because they apply only to penal statutes.
*173 The state is correct that the ex post facto provision applies only to laws dealing with criminal punishment. Johannessen v. United States, 225 U.S. 227, 32 S.Ct. 613, 56 L.Ed. 1066 (1912); Fairfield v. Huntington, 23 Ariz. 528, 205 P. 814 (1922). However, the mere fact that the focus of juvenile dispositions is on rehabilitation as a policy is not dispositive of the constitutional question. In Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), when faced with the question of whether the double jeopardy clause applied to juvenile court proceedings, the court rejected the argument that the constitutional issue could be decided simply by referring to the fact that the double jeopardy clause applies only to proceedings that are essentially criminal in nature. The court noted that with the exception of McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (right to jury trial), the Court had made applicable in juvenile proceedings those constitutional guarantees associated with traditional criminal prosecutions. The Court stated:
[I]t is clear under our cases that determining the relevance of constitutional policies, like determining the applicability of constitutional rights, in juvenile proceedings, requires that courts eschew "the `civil' label-of-convenience which has been attached to juvenile proceedings," (citations omitted) and that "the juvenile process ... be candidly appraised." (Citations omitted).
421 U.S. at 529, 95 S.Ct. at 1785, 44 L.Ed.2d at 355.
The court then considered the interest protected by the double jeopardy clause and balanced it against its potential infringement upon the purpose of juvenile proceedings. It found that there was nothing in the unique procedures of the juvenile court setting which would be so affected by application of the constitutional protection that it would support an exception to this right to which the juvenile would otherwise be entitled.
Similarly, we reject the state's argument that merely because the primary focus of disposition is upon rehabilitation rather than punishment, the sanctions imposed are civil and not penal in nature and therefore the ex post facto clause does not apply. Although the juvenile court system was originally designed to provide a distinctive procedure by which to deal with the problems of youth, since Gault[3], it is simply too late in the day to conclude that dispositions for delinquent children, which include incarceration, fines and restitution, are not to be considered criminal sanctions for purposes of the ex post facto clause. Here, not only was the sanction for the unlawful activity increased to permit the imposition of a fine and restitution where they were not permissible at the time appellant committed the act, but the conditions of release on parole were modified to make payment of court-ordered monetary reimbursement or assessments a condition of release. See footnote 2, supra. This is the type of legal disadvantage which was disapproved in Weaver.
A similar result was reached in Johnson v. Morris, 87 Wash.2d 922, 557 P.2d 1299 (1976). There the juvenile was committed to a juvenile correctional institution until his 18th birthday. That was the maximum commitment then available under the juvenile court's authority. Jurisdiction over juveniles was then extended to include children up to 21 years of age. As a result of this change, the appellant's commitment was extended to his 19th birthday. The court rejected the argument that merely because the juvenile court system was designed for rehabilitation rather than punishment, the proceeding was "civil" in nature and held that the ex post facto clause applied to the juvenile court proceeding. See also, Marshall v. Garrison, 659 F.2d 440 (4th Cir.1981), where the ex post facto clause was applied to the federal youth corrections act, and State v. Mendivil, 122 Ariz. 6, 592 P.2d 1272 (App. 1979), where it *174 was held that, even though the primary purpose of probation is rehabilitation, the retroactive application of a jurisdictional increase in length of probation violated the ex post facto clause.
Thus, we conclude that the retroactive application of the 1983 amendment to A.R.S. § 8-241(C) violated the ex post facto clauses of the United States and Arizona Constitutions and we reverse the order requiring the juvenile to pay a $100.00 assessment and $100.00 in restitution.[4]
CONTRERAS, P.J., and FROEB, J., concur.
NOTES
[1] In subsection D under the 1979 amendment, if restitution or a monetary penalty was imposed as a condition of probation, the court had the discretionary authority to permit the assessment or restitution to be satisfied by either a lump sum monetary reimbursement, an installment payment or through a program of work by which the delinquent would either repair damage to the victim's property, provide community services, or would be provided with a job for wages through which the payment could be made.

In 1980, the word "penalty" was changed to "assessment". Laws 1980, ch. 54, § 2.
[2] These amendments were contained in Laws 1983, ch. 257, and were part of major revisions in the commitment, disposition and release provisions relating to juvenile offenders. The legislature set out specific findings that juvenile crime was a matter of serious concern to the people of the State of Arizona and that deterrence of juvenile crime could best be achieved by instituting strict rules and policies in the juvenile justice system. This was to include mandatory work programs for juvenile offenders committed to the State Department of Corrections who would be paid wages. From these wages, restitution and monetary assessments would be made in lieu of monetary reimbursement and participation in community service programs as under the prior statute.

In furtherance of this stated policy, Title 41 was also amended by adding A.R.S. § 41-1605.01. This statute requires that any juvenile committed to the State Department of Corrections or confined in an institution, if able bodied, shall engage in not less than 40 hours per week of physical work unless the juvenile is regularly attending educational classes, in which case he is required to work not less than 20 hours per week. The statute further provides for payment of wages for the work performed and requires that two-thirds of that compensation shall be paid to the clerk of the superior court to satisfy any court order of restitution or, if restitution was not ordered, to defer the costs of room and board. Subsection H of A.R.S. § 41.1605.01 further provides that "[t]he department shall require the payment of court ordered monetary reimbursement or assessments as a condition of release on parole."
[3] In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
[4] This court has authority under A.R.S. § 13-4037 to correct illegal sentences.