808 P.2d 332

**STATE of Arizona, Appellee,**

v.

**Lawrence R. McCUIN, Appellant.**

**No. 1 CA–CR 89–431.**

Court of Appeals of Arizona,
Division 1, Department D.

Jan. 8, 1991.

Review Granted as to Issue No. 3 and
Review Denied as to Issue
Nos. 1, 2 and 4 April 23, 1991.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Crane McClennen, Asst. Chief Counsel, Phoenix, for appellee.

C. Kenneth Ray, II, P.C. by C. Kenneth Ray, II, Phoenix, for appellant.

## OPINION

McGREGOR, Judge.

Defendant Lawrence R. McCuin appeals from the sentences imposed following pleas of guilty to two counts of sexual conduct with a minor, both class 2 felonies. We affirm the convictions and sentences.

### I.

Beginning in 1979 and continuing until September 1988, defendant regularly engaged in sexual conduct with his minor daughter. On October 12, 1988, the grand jury indicted defendant on one count of sexual molestation of a child and three counts of sexual conduct with a minor. Count I, the sexual molestation charge, alleged that the offense occurred in 1979. Counts II and III, both sexual conduct charges, alleged that the offenses took place between June and September 1981. An additional sexual conduct charge, count IV, alleged that the offense took place on September 3, 1988. On November 7, 1988,

the state amended the indictment to allege *Hannah*[1] prior or repetitive convictions.

Defendant entered an *Alford*[2] plea to counts II and III. On count III, the trial court sentenced defendant to an aggravated term of 14 years imprisonment. On count II, the court suspended imposition of sentence and imposed a concurrent probationary term of seven years. As a term of probation, the court required the defendant to register as a sex offender pursuant to A.R.S. § 13–3821. Defendant filed a timely notice of appeal.

### II.

At the change of plea hearing, the prosecutor offered the following factual basis for defendant's guilty plea:

If this case were to proceed to trial the State would present testimony from [the victim] and she would testify as follows. With respect to both Counts II and III, they occurred on or between the dates of June 1st of 1981 and September 1st of 1981. She was at that time 10 years old and she resided at [a street address] located within Maricopa County, and on the same date the Defendant both placed his finger in her vagina and placed his penis in her vagina, and this is the first occurrence of that type that happened between she and the Defendant.

■ On appeal, defendant argues that the factual basis for the plea as provided by the state "unequivocally indicates that there was a single, isolated act of illegal sexual intercourse between the [defendant] and the Victim" which can "only be treated as a single conviction." We disagree.

The Arizona Supreme Court rejected a similar argument in *State v. Hill*, 104 Ariz. 238, 450 P.2d 696 (1969). There, the defendant entered the victim's home and, over the course of one and one-half hours, compelled the victim to engage in acts of cunnilingus, fellatio and four separate acts of sexual intercourse. Defendant was charged with two counts of rape and two counts of lewd and lascivious acts. Defen-

---

1. *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980).

2. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

dant argued he could be charged with only one count of rape and one count of lewd and lascivious acts since the acts were all part of a single transaction. The court rejected this argument:

> When several acts of intercourse and several lewd and lascivious acts are committed on the same victim we see no reason why as many counts for each offense cannot be brought, despite the fact the defendant never left his victim's bed during the course of the commission of the acts.

104 Ariz. at 240, 450 P.2d at 698. *See also State v. Finley*, 108 Ariz. 420, 501 P.2d 4 (1972) (defendant was properly convicted of raping and molesting his daughter when acts of rape and child molestation were separate, with the elements of each being accomplished without reference to elements of the other); *State v. Phillips*, 102 Ariz. 377, 430 P.2d 139 (1967) (offense of fellatio found distinctly separate from act of child molesting, so that defendant charged with lewd and lascivious acts and also with child molestation by placing his finger into private parts of an 8–year–old girl committing fellatio upon him was not being punished twice for same act); *People v. Harrison*, 48 Cal.3d 321, 256 Cal.Rptr. 401, 768 P.2d 1078 (1989) (each digital penetration committed in course of defendant's assault upon victim constituted separate violation of statute proscribing such penetrations, for which defendant could be separately convicted).

If the state can prove the necessary criminal elements of each act, the time span within which the acts were committed is immaterial. *State v. Hill*, 11 Ariz.App. 230, 463 P.2d 125 (1970). Here, the evidence offered by the state sufficiently established the separate acts of defendant's placing his finger in the victim's vagina and placing his penis in the victim's vagina. Each act constituted intercourse as defined by A.R.S. § 13–1401 and each was established without reference to the elements of the other. When several sexual acts result from the same sexual attack, the defendant may be charged with more than one crime. *State v. Finley*, 108 Ariz. 420, 501 P.2d 4 (1972).

Defendant's reliance on A.R.S. § 13–604.H is misplaced. That statute treats convictions for two or more offenses committed on the same occasion as one conviction only for the purpose of alleging prior convictions. *Id.* In this case, the state dropped its allegation of *Hannah* priors and two counts of the indictment as part of its plea bargain with defendant. A.R.S. § 13–604.H is not applicable here. The trial court properly convicted and sentenced defendant on two counts of sexual conduct with a minor.

### III.

█ The defendant also argues that the trial court erred in sentencing him to an aggravated term of imprisonment on one count of sexual conduct with a minor while simultaneously imposing a mitigated sentence of probation for the other conviction for the same offense. Defendant contends that the court, having found "substantial mitigating factors," should have imposed probation on both counts. Because the trial court has wide discretion in passing sentence, we will uphold the sentence if it falls within the statutory limits, unless the court clearly abused its discretion. *E.g., State v. Sanders*, 110 Ariz. 503, 520 P.2d 1127 (1974).

The presumptive term for conviction of a class 2 felony is seven years imprisonment. A.R.S. § 13–701. Pursuant to A.R.S. § 13–702.B, the court may increase the sentence up to 100 percent if it finds sufficient aggravating circumstances. Here, the trial court considered three aggravating factors in sentencing the defendant on count III: (1) the particularly heinous nature of the crimes in that they were accomplished "in violation of the trust that a child would have for a parent," were two of a series of crimes committed over a period of years and involved abnormal sex acts, (2) the significant emotional trauma suffered by the victim and (3) the need to protect other potential victims.

The trial court properly considered each of those factors. A.R.S. § 13–702.D directs the court to consider, as aggravating

circumstances, the especially heinous, cruel or depraved manner in which the act was committed, emotional harm caused to the victim, and other factors the court may deem appropriate to the ends of justice. Moreover, the court's use of prior incidents of incestuous relations in sentencing, even though they did not result in convictions, is proper. *State v. Cawley*, 133 Ariz. 27, 648 P.2d 142 (App.1982). The need to protect potential victims also is an appropriate factor to consider in deciding the length of sentence to impose. *State v. Williams*, 134 Ariz. 411, 656 P.2d 1272 (App.1982).

The sole mitigating factor considered by the trial court was the defendant's need for rehabilitative counselling, which would not be available to him while incarcerated. The trial court, however, may impose an aggravated term after balancing the aggravating and mitigating circumstances, notwithstanding the existence of mitigating circumstances. *State v. Henderson*, 133 Ariz. 259, 650 P.2d 1241 (App.1982), *overruled on other grounds*, 140 Ariz. 544, 683 P.2d 743 (1984). In sentencing defendant on count III, the trial court did not abuse its discretion by finding that aggravating factors outweighed this mitigating circumstance.

■ The trial court also set forth adequate reasons to justify imposing probation on count II. *See* A.R.S. § 13–901.H; *State v. Mathews*, 130 Ariz. 46, 633 P.2d 1039 (App.1981) (the trial court must set forth on the record the factual and legal reasons supporting its imposition of probation because it is a deviation from the presumptive sentence).[3] Before imposing sentence, the court observed that the law requires that defendant be punished for his crimes but also seeks to assure that defendant will not again commit crimes of the same na-

ture. The court believed these goals would best be accomplished by incarcerating defendant for a substantial time as punishment and placing him on probation with counselling to prevent a recurrence. We find no abuse of discretion in the sentences imposed, which clearly fall within the statutory limits.

## IV.

■ As a condition of defendant's term of probation on count II, the trial court required him to register as a sex offender pursuant to A.R.S. § 13–3821. At sentencing, the trial judge noted that although the effective date of section 13–3821 post-dated the offenses charged, she did not believe the registration requirement offended the constitutional prohibitions against *ex post facto* laws. We agree. In reaching that conclusion, we depart from the recent holding of another panel of this court in *State v. Noble*, 167 Ariz. 440, 808 P.2d 325 (App. 1990), for the reasons explained below.

In 1978, Arizona repealed its statute requiring sex offenders to register with local law enforcement agencies. *See* Laws 1978, ch. 201, § 242. In 1983, the legislature enacted Arizona's current sex offender registration statutes, A.R.S. §§ 13–3821 through –3824.[4] Section 13–3821.A requires that all persons convicted in Arizona of a sexual offense pursuant to A.R.S. §§ 13–1401 through –1416 or A.R.S. §§ 13–3551 through –3556, as well as those convicted in another state of acts that would be a sexual offense in Arizona, register with the sheriff of the county in which that person resides. If the convicted offender moves to another county or changes his address within the county, he must so notify the sheriff. At the time of registration,

---

3. Even had the trial judge failed to set forth adequate reasons for granting probation on count II, the state is barred from claiming error because it did not bring a cross appeal. *State v. Dawson*, 164 Ariz. 278, 792 P.2d 741 (1990).

4. At least ten other states have enacted similar sex offender registration statutes. *See* Ala.Code §§ 13A–11–200 through –203; A.R.S. § 13–3821; Ark.Stat.Ann. §§ 12–12–901 through –909; Cal. Penal Code § 290; Ill.Rev.Stat. ch. 38, paras.

221 through 230; Mont.Code Ann. § 46–23–501; Nev.Rev.Stat. §§ 207.151 through .175; Ohio Rev.Code Ann. §§ 2950.01 through –.99; Okla. Sta. Tit. 57, §§ 581 through –587; Tenn.Code. Ann. § 38–6–110; and Utah Code Ann. § 77–27–21.5. Other states have adopted sex offender information statutes. *See, e.g.,* Mich. Stat.Ann. § 4.467(1); Minn.Stat.Ann. § 243.165; Miss.Code Ann. §§ 45–31–1 through –19; Or. Rev.Stat. § 181.518.

the sheriff must fingerprint and photograph the person registering and, within three days thereafter, provide that information to the criminal identification section of the Department of Public Safety and to the chief of police of the city in which the person resides. A.R.S. § 13–3821.B. None of the information obtained can be made available to any person except for use by law enforcement officers and for dissemination as provided in A.R.S. § 41–1750.[5] A.R.S. § 13–3821.

Defendant argues that A.R.S. § 13–3821, by subjecting him to the "constant scrutiny" of the state, imposes punishment not available at the time of his 1981 offenses and therefore constitutes an *ex post facto* law in violation of the Arizona Constitution, which provides:

> No bill of attainder, ex-post-facto law, or law impairing the obligation of a contract, shall ever be enacted.

Ariz. Const. art. II, § 25.

Because the Arizona constitutional prohibition against *ex post facto* laws is similar to that of the United States Constitution,[6] our analysis is aided by looking to cases interpreting the language of the federal constitution. *State v. Yellowmexican,* 142 Ariz. 205, 207, 688 P.2d 1097, 1099 (App. 1984), *adopted and approved,* 142 Ariz. 91, 688 P.2d 983 (1984).

Early in this country's history, the United States Supreme Court defined those legislative acts that implicate the *ex post facto* clause as follows:

> 1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal;

and punishes such action. 2d. Every law that *aggravates* a *crime,* or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment,* and inflicts a *greater punishment,* than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence,* and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.*

*Calder v. Bull,* 3 U.S. (Dall.) 386, 390, 1 L.Ed. 648, 650 (1798) (emphasis in original).

Although *Calder* continued to provide the standard against which penal laws were measured, some subsequent decisions by the Court seemed to broaden the *Calder* construction of the *ex post facto* clause. For instance, in *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883), the Court defined an *ex post facto* law as one which "[i]n relation to that offense, or its consequences, alters the situation of a party to his disadvantage." *Id.* at 228–29, 2 S.Ct. at 449, 27 L.Ed. at 511 (*quoting United States v. Hall,* 26 F.Cas. 84, 86 (D.Pa.1809)). Shortly thereafter, in *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), the Court concluded that a change in Utah law that reduced the size of criminal juries from twelve persons to eight violated the *ex post facto* clause because it deprived Thompson of "a substantial right involved in his liberty." *Id.* at 352, 18 S.Ct. at 623, 42 L.Ed. at 1067.

Two other decisions involving statutes that allegedly affected only procedural,

---

5. A.R.S. § 41–1750 establishes and defines the duties of a criminal identification section within the department of public safety. The criminal identification section collects and disseminates, as permitted, information related to all persons arrested for or convicted of any public offense within the state. The only portion of the statute applicable to sexual offenses, but not other public offenses, provides:
   > B. The criminal identification section shall:
   > . . . .
   > 11. Provide criminal history record information concerning convictions for violations of title 13, chapter 14 or 32 in which the victim is a minor or convictions for violations of title 13, chapter 35.1 or § 13–3623 involving a per-

son who is employed or is seeking employment in which he regularly is in contact with minors under fifteen years of age, if the information is requested by the person's employer or potential employer, or by any youth-serving agency in which the person is or seeks to become a volunteer. No action may be brought against the employer or agency as a result of a nonnegligent failing to obtain the person's criminal history.

6. No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts....
   U.S. Const. art. 1, § 10.

rather than substantive rights, seemed to further expand the reach of the *ex post facto* clause. In *Duncan v. Missouri,* 152 U.S. 377, 14 S.Ct. 570, 38 L.Ed. 485 (1894), the Court stated that depriving a defendant of "substantial protections with which the existing law surrounds the person accused of crime" constitutes an *ex post facto* violation. *Id.* at 382, 14 S.Ct. at 572, 38 L.Ed. at 487. Finally, in *Malloy v. South Carolina,* 237 U.S. 180, 35 S.Ct. 507, 59 L.Ed. 905 (1915), the Court stated that the prohibition against *ex post facto* laws was intended to secure substantial personal rights against arbitrary and oppressive legislation. *Id.* at 183, 35 S.Ct. at 508, 59 L.Ed. at 906.

In *Collins v. Youngblood,* — U.S. —, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), the Court expressly considered the apparent inconsistencies between *Calder* on the one hand and decisions such as *Kring, Thompson, Duncan,* and *Malloy* on the other. The Court noted that *Kring* and *Thompson* had caused confusion in state and federal courts about the scope of the *ex post facto* clause. To alleviate that confusion, the Court overruled *Kring,* finding that its holding departed from the meaning of the clause as it was understood at the time the Constitution was adopted. In like manner, the Court overruled *Thompson* to the extent it rested on the *ex post facto* clause, stating that, while the right to a jury trial provided by the Sixth Amendment obviously is a substantial right, it is not a right "that has anything to do with the definition of crimes, defenses, or punishments, which is the concern of the *Ex Post Facto* Clause." *Collins,* — U.S. at —, 110 S.Ct. at 2724, 111 L.Ed.2d at 45. Finally, the Court cautioned that its holdings in *Malloy* and *Duncan* were intended only to refer to the fact that a legislature cannot immunize a statute from scrutiny under the *ex post facto* clause simply by labelling it "procedural" rather than "substantive." Those decisions, the Court emphasized, were not intended to expand the meaning of the *ex post facto* clause beyond the prohibitions defined by the *Calder* categories. *Collins,* — U.S. at —, 110 S.Ct. at 2721, 111 L.Ed.2d at 41.

As *Collins* thus made clear, the *ex post facto* clause comes into play only if a statute implicates one of the "core concern[s] of the *Ex Post Facto* Clause" as defined in *Calder.* *Collins,* — U.S. at —, 110 S.Ct. at 2719, 111 L.Ed.2d at 39. The only one of those core concerns potentially implicated by Arizona's sex offender registration statute is whether the statute inflicts a greater punishment for sexual crimes than did the law annexed to those crimes when committed. If the statute is penal, applies retrospectively and disadvantages the offender affected by it, it violates the *ex post facto* prohibition. *Collins,* — U.S. at —, 110 S.Ct. at 2719, 111 L.Ed.2d at 39.

Many statutes intended to regulate or to impose a civil penalty subject those affected to some burden or disability. Such statutes, however, do not offend the *ex post facto* clause, which applies only to penal statutes that impose criminal punishment. *E.g., Collins,* — U.S. at —, 110 S.Ct. at 2718, 111 L.Ed.2d at 37–38; *Matter of Appeal in Maricopa County Juvenile Action No. J–92130,* 139 Ariz. 170, 677 P.2d 943 (App.1984). Whether the registration statute is penal or regulatory depends upon the purpose of the statute:

> If the statute imposes a disability *for the purposes of punishment*—that is, to reprimand the wrongdoer, to deter others, etc., it has been considered penal. But a statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose. The Court has recognized that any statute decreeing some adversity as a consequence of certain conduct may have both a penal and a nonpenal effect. *The controlling nature of such statutes normally depends on the evident purpose of the legislature.*

*Trop v. Dulles,* 356 U.S. 86, 96, 78 S.Ct. 590, 595–96, 2 L.Ed.2d 630, 639–40 (1958) (emphasis added).

To ascertain the legislative purpose, we first examine whether, in establishing the registration requirement, the legislature "indicated either expressly or impliedly a preference for one label or the other."

*United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 749 (1980). We have little legislative history to guide us in determining the purpose of Arizona's registration statute. We have, however, previously observed that registration is a "proper tool to be given to police officers for use in investigating criminal offenses." *State v. Lammie,* 164 Ariz. 377, 382–83, 793 P.2d 134, 139–40 (App. 1990).

Other courts also have regarded registration statutes as providing proper investigative tools. In *People v. Adams,* 198 Ill. App.3d 74, 144 Ill.Dec. 402, 555 N.E.2d 761, *appeal allowed,* 133 Ill.2d 560, 149 Ill.Dec. 325, 561 N.E.2d 695 (1990), the court discussed the sex offender registration statute adopted in Illinois, which established a procedure similar to that adopted in Arizona. *See* Ill.Rev.Stat. ch. 38, paras. 221 through 230. There, the court concluded that

> the purpose of the statute is to aid law enforcement in preventing future sex offenses against children.... Protection of children from sex offenses is very much part of the State's unquestionable interest in protecting the health, safety and welfare of its citizens. As such, the registration requirement at issue here clearly serves a legitimate governmental purpose.

*Id.* 198 Ill.App.3d at 80, 144 Ill.Dec. at 406, 555 N.E.2d at 765. *See also Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (city ordinance requiring all felons to register was, at most, a law enforcement technique designed for the convenience of law enforcement agencies).

The language of Arizona's statute indicates that it was intended as an aid to law enforcement agencies. The legislature, in enacting the registration statute, included a provision requiring persons convicted in other states of a crime that would be a sexual offense under Arizona's laws to register. A.R.S. § 13–3821.A. We do not believe the Arizona legislature would have presumed to impose an additional punishment on persons charged, tried, convicted and presumably punished in other states.

On the other hand, we can reasonably conclude, by considering the statutory emphasis upon "tracking" requirements as well as the breadth of the class of persons affected by the statute, that the legislature did intend to facilitate the identification and, if appropriate, apprehension of past sex offenders. We think the legislature could reasonably have concluded that registration of sex offenders could facilitate the criminal investigation of reported sex offenses. Whether that purpose is wise, and whether the registration statute will be effective in accomplishing that purpose, is not for us to say. We do conclude, however, that the legislature's purpose was regulatory rather than punitive.

■ Our conclusion that the legislature's intention was to accomplish a regulatory purpose, however, does not end our inquiry. We must inquire further as to whether the statutory scheme is in fact so "punitive either in purpose or effect as to negate that intention." *United States v. Ward,* 448 U.S. at 249, 100 S.Ct. at 2641, 65 L.Ed.2d at 749. If so, the statute must be evaluated for compliance with the *ex post facto* clause and declared unconstitutional if it violates the clause. We undertake this inquiry, however, mindful that "only the clearest proof [can] suffice to establish the unconstitutionality of a statute on such a ground." *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435, 1448 (1960). We will presume that the legislature acted in a constitutional manner, and will uphold the statute when a reasonable basis exists for its enactment. *State v. Murphy,* 117 Ariz. 57, 570 P.2d 1070 (1977).

The Supreme Court has defined several factors relevant to the inquiry of whether the penal effect of a statute outweighs its regulatory purpose. Those questions, summarized in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), include the following:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter,* whether its op-

eration will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, ...

*Id.* at 168–69, 83 S.Ct. at 567–68, 9 L.Ed.2d at 661. Although the tests described in *Mendoza–Martinez* provide guidance, they are neither dispositive nor exhaustive and, while all the factors are relevant, they often point in different directions. *United States v. Ward,* 448 U.S. 242, 249, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 750 (1980). The burden of proof rests, of course, upon the party challenging the constitutionality of the statute. *State v. Tocco,* 156 Ariz. 116, 119, 750 P.2d 874, 877 (1988).

Our task, then, is to weigh the regulatory and penal aspects of the registration requirement. We weigh those factors differently than did the *Noble* panel and conclude that, on balance, the purpose of the registration statute is regulatory rather than penal in character.

Our first inquiry is whether the registration requirement involves an *affirmative* disability or restraint. We consider this factor in conjunction with the *Collins* admonition that, to violate the *ex post facto* clause, a statute must do more than alter a substantial personal right, deprive a defendant of substantial protections, or alter a defendant's situation to his disadvantage. We recognize that the registration requirement disadvantages convicted sexual offenders. The registration requirement, however, does not affirmatively inhibit or restrain an offender's movement or activities. Moreover, the information required about the offender's past convictions is already a matter of public record, and the dissemination that can be made of the information provided during the registration process is limited. The statute certainly does not impose the kind of affirmative disability or restraint usually associated with criminal punishment.

The second *Mendoza–Martinez* factor also indicates that the statute is regulatory rather than penal. Registration simply has not traditionally or historically been regarded as a punishment. To the contrary, registration is a traditional governmental method of regulating the activities or conduct of a particular group. In particular, "[l]aws regulating the conduct of convicted felons have long been upheld as valid exercises of the legislative function." *United States v. Donofrio,* 450 F.2d 1054, 1056 (5th Cir.1971). *See, e.g.,* Ariz. Const. art. VII, sec. 2 (convicted felons disqualified from voting at elections); *Application of Walker,* 112 Ariz. 134, 539 P.2d 891 (1975) (felony conviction alone sufficient to bar applicant from admission to practice of law); A.R.S. § 4–202.D (convicted felon cannot obtain license to sell intoxicating liquors for five years after conviction); A.R.S. § 32–2412.A.3 (applicants for license as private investigator must not have been convicted of felony or any crime involving moral turpitude).

Arizona's statutory scheme describing the sentences that can be imposed upon one convicted of a criminal offense also indicates that registration is not a traditional "punishment." Our statute defining the authorized disposition of those convicted of criminal offenses permits the court to impose a term of imprisonment, a fine, or probation. A.R.S. § 13–603. The legislature has made no other "punishments" available as part of the sentencing procedure. Moreover, in *State v. Muldoon,* 159 Ariz. 295, 767 P.2d 16 (1988), our supreme court distinguished even probation from traditional sentences:

As the State argues, however, there is a difference between a sentence and an order imposing probation. Probation is not a sentence. [Citation omitted.] A sentence is a judicial order requiring a defendant convicted in a criminal case to presently suffer a specified sanction such as incarceration, monetary fine, or both. Probation is a judicial order allowing a criminal defendant a period of time in which to perform certain conditions and thereby avoid imposition of a sentence....

Although the acts required to be performed as conditions of probation may be onerous, they are not criminal sanctions or sentences. They are opportunities to avoid criminal sentencing.

*Id.* at 298, 767 P.2d at 19. Indeed, in *State v. Young,* 112 Ariz. 361, 542 P.2d 20 (1975), the court referred to the registration requirement of the sexual offender registration statute then in effect as being only a "collateral effect of a conviction." *Id.* at 363, 542 P.2d at 22. The second factor thus indicates the regulatory nature of the statute.

The next relevant *Mendoza–Martinez* question is whether the registration statute promotes the traditional aims of punishment—retribution and deterrence. We agree with *Noble* that a registrant, aware of the statute's investigative purpose, may be deterred from future offenses. Because registration is not consistent with traditional ideas of punishment, however, the statute does little to exact retribution. Moreover, the history of the statute indicates that the legislature did not intend to further the aims of retribution and deterrence through this statute. Between 1978, when the legislature repealed the predecessor registration statute, and 1983, when the legislature enacted the current statute, no statute required registration of sex offenders. Nothing in the legislature's treatment of sexual offenses during those years suggests the legislature intended that this state retreat from the traditional aims of retribution and deterrence as related to sexual offenses. Had the legislative purpose in adopting the registration statute been deterrence or retribution, we think it unlikely that the legislature would have permitted a five-year lapse in requiring registration.

Because this case involves a registration statute, two of the *Mendoza–Martinez* factors are essentially neutral. The felonies of which defendant was convicted require a finding of *scienter,* but that fact is of little assistance in defining the purpose of the registration requirement itself. Likewise, asking whether the behavior to which the statute applies is already a crime does little to advance our inquiry. On the one hand, the conduct that subjects an offender to the registration requirement obviously is already a crime. On the other hand, the act of registering itself does not constitute criminal activity.

*Mendoza–Martinez* would also have us ask whether an alternative purpose to which the statute may rationally be connected is assignable for it. The answer to that question is clearly yes, as the statute aids investigative work. The final question, then, is whether the penalty appears excessive in relation to the alternative purpose assigned. In *Noble,* the court concluded the statute sweeps too broadly because persons convicted of all sexual offenses, including open and notorious cohabitation, sodomy, adultery, and lewd and lascivious acts must register. Requiring registration, regardless of the circumstances or severity of the offense, the court concluded, bears no rational relationship to the statute's regulatory purpose. *Noble,* 167 Ariz. at 444, 808 P.2d at 330.

We disagree with that analysis for several reasons. First, the analysis assumes that knowing the identity of persons convicted of such crimes will not assist agencies conducting criminal investigations. While knowing the identity of those convicted of such offenses, if indeed the statutes are enforced, may be of minimal assistance to law enforcement agencies, we cannot say the requirement bears no rational relationship to the statute's regulatory purpose. Moreover, the fact that the registration requirement applies to all sexual offenses emphasizes its regulatory purpose. Unlike penal sanctions, which vary with the circumstances and severity of an offense, registration applies equally to all persons convicted of sexual offenses. Because the purpose of assisting law enforcement officials in conducting criminal investigations of sexual crimes is rationally connected to the statutory requirement, we conclude the registration requirement is not an excessive means of accomplishing the statute's regulatory purpose.

For those reasons, we conclude that application of the *Mendoza–Martinez* criteria

to the registration statute indicates that the statute is regulatory rather than penal in nature. Our analysis of other statutes, upheld against *ex post facto* challenges, bolsters that conclusion.

For instance, in *De Veau v. Braisted,* 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960), the Supreme Court considered the constitutionality of a New York statute that barred any union whose officers or agents had been convicted of a felony from collecting dues from persons employed on the waterfront. The New York statute, passed in 1953, affected the union of which De Veau was an officer because De Veau had pled guilty in 1920 to a charge of grand larceny and had received a suspended sentence. In responding to the argument that the statute violated the *ex post facto* clause, the Court concluded that because the legislative purpose was not to punish ex-felons but to devise a needed scheme of regulating the waterfront, the fact that unpleasant circumstances were brought to bear upon an individual for prior conduct did not mean that the law violated the *ex post facto* clause. *Id.* at 160, 80 S.Ct. at 1155, 4 L.Ed.2d at 1120. Similarly, in *United States v. Donofrio,* 450 F.2d 1054 (5th Cir.1971), the court upheld a statute that made criminal the possession of a firearm by a convicted felon. The court held that, although the law imposed a disability upon the convicted felon, the law was a valid exercise of the legislative power to regulate the conduct of convicted felons.

In *Atteberry v. State,* 84 Nev. 213, 438 P.2d 789 (1968), the Nevada Supreme Court upheld the constitutionality of Nevada's statute requiring the registration of habitual criminals. The court noted that the disclosure required by the act simply constituted a compilation of matters already of public record and undoubtedly provided a valuable tool in the hands of the police. *Id.* 438 P.2d at 791. Finally, in *People v. Adams,* the Illinois court concluded that the statute requiring registration of sex offenders did not impose "punishment" for purposes of the Eighth Amendment. *Id.* 198 Ill.App.3d at 81, 144 Ill.Dec. at 407, 555 N.E.2d at 766.

One other court has reached a contrary result. In *In re Reed,* 33 Cal.3d 914, 191 Cal.Rptr. 658, 663 P.2d 216 (1983), the court held that California's statute requiring sex offenders to register constituted cruel and unusual punishment, at least when applied to those convicted of misdemeanor offenses. The court, utilizing the *Mendoza–Martinez* factors, weighed them differently than have we. The court, however, seemed to rely upon its concern that law enforcement personnel would use the list of registrants to compel a series of command performances at lineup and its concern that the registration requirement is not an effective law enforcement tool. Nothing in the record before us indicates that law enforcement personnel have used registration information improperly. If indeed law enforcement personnel use the information improperly, and arrest registrants without probable cause, or use the information in any manner that ignores the protected rights of those who register, judicial remedies exist. If registration is not an effective means to accomplish the legislative purpose, the remedy lies with the legislature, not with this court.

## V.

■ Defendant finally argues that the registration requirement is a special sentencing condition of which the court should have advised him before accepting his plea. Rule 17.2(b), Arizona Rules of Criminal Procedure. We disagree.

Rule 17.2(b) requires that a defendant understand both the range and special conditions of the sentence. *State v. Carranza,* 156 Ariz. 188, 189, 751 P.2d 38, 39 (App.1988). Because probation is a term of a suspended sentence and not a sentence, its terms and conditions are not special conditions of sentencing and do not fall within the requirements of rule 17.2(b). *Id.* Moreover, in *State v. Young,* 112 Ariz. 361, 542 P.2d 20 (1975), the Arizona Supreme Court held that the trial court did not err in failing to advise the defendant of his responsibility to register as a sex offender pursuant to A.R.S. § 13–1271, the prede-

cessor to A.R.S. § 13–3821. The trial court did not have a responsibility to inform the defendant of the registration requirement because it was not a condition of the sentence imposed but an independent statutory requirement. *See also State v. Bouchier,* 159 Ariz. 346, 767 P.2d 233 (App. 1989).

## VI.

We have reviewed all aspects of these proceedings for fundamental error and have found none. For the foregoing reasons, we affirm the decision of the trial court.

KLEINSCHMIDT, P.J., concurs.

CLABORNE, Judge, dissenting.

I respectfully dissent from the majority's conclusion that the defendant's registration as a sex offender does not offend the constitutional prohibition against *ex post facto* laws.

The trial court required the defendant to register as a sex offender pursuant to A.R.S. § 13–3821 for crimes which he committed before the effective date of the statute. Recently, in *State v. Noble,* 167 Ariz. 440, 808 P.2d 325 (App.1990), a different panel of this court held that such a requirement violates the *ex post facto* clause of the Arizona Constitution. The court concluded that § 13–3821 is a criminal penalty and imposes increased burdens on a defendant. *Noble,* at 446, 808 P.2d at 331. I find *Noble* very persuasive and would apply it.

My disagreement with the majority lies in their belief that § 13–3821 is, on balance, more regulatory than penal. I realize that our objective is to divine the legislative purpose of the sex offender registration statutes. *See* A.R.S. §§ 13–3821 through 13–3824. In view of the legislature's silence, our task is difficult. We must determine whether registration was designed merely to regulate certain criminal activity or whether in reality it acts as punishment.

The purpose of registration, as perceived by the majority, is to aid law enforcement in the investigation of reported sex offenses. I have no quarrel with this percep-

tion when applied to crimes considered aberrant and more likely to be repeated such as sexual abuse, § 13–1404; sexual conduct with a minor, § 13–1405; sexual assault, § 13–1406; and molestation of a child, § 13–1410. I do not believe, however, that this purpose is served when registration is applied to crimes classified as class 3 misdemeanors, such as adultery, § 13–1408; open and notorious cohabitation, § 13–1409; lewd and lascivious acts, § 13–1412; and the infamous crime against nature, § 13–1411.

Furthermore, registration for misdemeanor sex offenses places an onerous burden upon the registrant in light of the statutory penalty for the offense. For example, a person convicted of adultery or open and notorious cohabitation must register as a sex offender for life. The maximum amount of time the individual may spend in prison is thirty days. *See* A.R.S. § 13–707(A)(3). After the offender pays his or her debt to the community, either by fine or imprisonment, registration continues. The offender is subject to police interrogation and employers may be told of the sexual transgression. The only explanation for lifetime registration of misdemeanor sex offenders is retribution and deterrence.

The majority cites the opinions of two courts which have considered whether registration of sex offenders is more penal than regulatory. In *In re Reed,* the California Supreme Court, using the same analysis as the majority here, concluded that California's sex registration statute was penal in nature, and that it constituted cruel and unusual punishment. 33 Cal.3d 914, 191 Cal.Rptr. 658, 663 P.2d 216 (1983). The California Supreme Court, applying the analysis of *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644, said:

Although the Legislature may reasonably have intended that sex offender registration serve as a law enforcement tool to facilitate criminal investigations, it is not clear that the measure is effective in practice. Moreover, the fact that a minimal or "rational" basis may underlie the legislation is out-weighed here by the fact that the penalty of registration is

*"excessive* in relation to the alternative purpose assigned" to it.

*In re Reed,* 33 Cal.3d at 922, 191 Cal.Rptr. at 661–62, 663 P.2d at 219–220 (footnote omitted, emphasis in original).

In *People v. Adams,* the Illinois Court of Appeals, which declined to apply the *Mendoza–Martinez* analysis, held that Illinois' sex offender registration statute was not punishment. 144 Ill.Dec. 402, 406, 555 N.E.2d 761, 765, *appeal allowed,* 133 Ill.2d 560, 149 Ill.Dec. 325, 561 N.E.2d 695 (1990). That case is distinguishable from the matter before us for two reasons. First, the Illinois appellate court had before it explicit legislative history which indicated the purpose of registration was to aid law enforcement in preventing future sex offenses against children. *Id.* 144 Ill.Dec. at 406, 555 N.E.2d at 765. And second, the statute applies to a much narrower class of crimes. Registration comes into play only upon a second conviction for a felony sex offense where the victim is under the age of eighteen. *Id.* 144 Ill.Dec. at 404, 555 N.E.2d at 763.

Furthermore, the strength of *Adams* is questionable. The case is on review by the Illinois Supreme Court and at least one member of the court felt that registration constituted punishment:

> I find the Act imposes an affirmative disability or restraint, it comes into play on a finding of *scienter,* it applies to behavior that is criminal, and, regardless of the legislature's stated intent, it will promote traditional aims of punishment—retribution and deterrence. I believe the presence of these factors requires finding that the Act is punishment.
>
> I am not convinced that the Act imposes no more of a constraint on liberty than civil disabilities associated with convicted felons such as limitations on possessions of firearms, the right to vote, or the right to hold public office. In my opinion, the Act imposes a more significant affirmative disability or restraint than is stated by the majority. It is a disability that necessarily entails a loss of privacy. Defendant, if he chooses to start a new life in Illinois after his release from custody, must announce himself as a habit-ual child sex offender to law enforcement in his community. For 10 years he must live his life knowing that local law enforcement has been made aware of his past child sex abuse convictions. I am not persuaded that defendant suffers no more of a loss of privacy than he would by the public record of his convictions. The Act ensures a certain and direct intrusion that may not necessarily result from defendant's public record. Nor am I persuaded that the confidentiality provision negates finding a loss of privacy. I find the significant intrusion to be the process under the Act itself, not whether the information may be leaked to the community.

*Id.* 144 Ill.Dec. at 410–11, 555 N.E.2d at 769–70 (Dunn, J., specially concurring).

Given our legislature's silence and the broad application of § 13–3821, I believe that, on balance, the statute is more penal than regulatory. Therefore, I would reverse that part of the trial court's judgment and sentence which required the defendant to register under A.R.S. § 13–3821. In all other respects, I would affirm the trial court's judgment and sentence.