808 P.2d 325

**STATE of Arizona, Appellee,**

v.

**Michael Brown NOBLE, Appellant.**

**No. 1 CA–CR 88–1281.**

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 13, 1990.

Review Granted April 23, 1991.

Robert K. Corbin, Atty. Gen. by Ronald L. Crismon, Acting Chief Counsel, Criminal Div., and R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Carol A. Carrigan, Deputy Public Defender, Phoenix, for appellant.

## OPINION

FIDEL, Presiding Judge.

We address one issue in this appeal: Does application of the sex offender registration statute to defendant violate the *ex post facto* provision of the Arizona Constitution, art. 2, § 25?

## PROCEDURAL BACKGROUND

Appellant Michael Brown Noble (defendant) pled guilty in 1988 to child molestation and sexual conduct with a minor, both class two nondangerous, nonrepetitive felonies. The trial court accepted the plea and sentenced defendant to consecutive, aggravated terms of eleven years on the first count and twelve years on the second. The court also ordered defendant to register as a sex offender pursuant to Ariz.Rev.Stat. Ann. § 13–3821 (1985).[1] Defendant timely appealed.

Arizona's earlier sex offender registration provision was repealed by Laws 1978, ch. 201, § 242, effective October 1, 1978. The defendant pled guilty to acts occurring in 1981 and 1982. The sex offender provision was reenacted by Laws 1983, ch. 202, § 13, now Ariz.Rev.Stat.Ann. § 13–3821. Thus, when defendant committed his offenses, no Arizona law required sex offender registration. Defendant argues that application of the present registration requirement to crimes that predated its enactment violates the *ex post facto* clause of the Arizona Constitution. We agree.

## DISCUSSION

The Arizona constitutional prohibition against *ex post facto* laws is similar to that found in the U.S. Constitution. *State v. Yellowmexican,* 142 Ariz. 205, 207, 688 P.2d 1097, 1099 (App.), *adopted and approved,* 142 Ariz. 91, 688 P.2d 983 (1984). Article 2, § 25 of the Arizona Constitution provides: "No bill of attainder, ex-post-facto law, or law impairing the obligation of a contract shall ever be enacted." Article 1,

§ 10 of the U.S. Constitution provides: "No state shall ... pass any Bill of Attainder, ex post facto Law or Law impairing the Obligation of Contracts...."

When a clause of our state constitution varies significantly from the analogous clause of the U.S. Constitution, we are obliged to consider the meaning of the unique language that our framers chose. *See* Feldman & Abney, *The Double Security of Federalism: Protecting Individual Liberty Under the Arizona Constitution,* 20 Ariz.St.L.J. 115, 145 (1988). The federal and Arizona *ex post facto* prohibitions do not differ significantly, however, and Arizona courts have consistently employed a common analysis for both provisions. *State v. Cocio,* 147 Ariz. 277, 284, 709 P.2d 1336, 1343 (1985), *State v. Valenzuela,* 144 Ariz. 43, 47, 695 P.2d 732, 736 (1985). Thus, though we approach the present issue under the Arizona Constitution, our analysis is informed by cases that have interpreted the similar language of the U.S. Constitution.

■ The federal *ex post facto* clause applies only to laws imposing criminal penalties and does not apply to laws that impose civil, regulatory penalties. *See United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). The clause operates to invalidate the retroactive application of a law that makes more burdensome the punishment for a crime. *Collins v. Youngblood,* —— U.S. ——, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990) (quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925)). From the federal cases, we thus derive a three-step *ex post facto* analysis:

1. Section 13–3821 provides:

A. A person who has been convicted of a violation of chapter 14 or 35.1 of this title or who has been convicted of an offense committed in another state which if committed in this state would be a violation of chapter 14 or 35.1 of this title shall, within thirty days after the conviction or within thirty days after entering any county of this state for the purpose of residing or setting up a temporary domicile for thirty days or more, register with the sheriff of the county in which he resides or sets up temporary domicile.

B. At the time of registering, the person shall sign a statement in writing giving such

information as required by the director of the department of public safety. The sheriff shall fingerprint and photograph the person and within three days thereafter shall send copies of the statement, fingerprints and photographs to the criminal identification section within the department of public safety and the chief of police, if any, of the place where the person resides.

C. The clerk of the superior court in the county in which a person has been convicted of a violation of chapter 14 or 35.1 of this title shall notify the sheriff in that county of the conviction within thirty days after entry of the judgment.

(1) whether the law is retroactive as applied to the defendant; (2) whether application of the law makes punishment for a crime more burdensome; and (3) whether the law imposes a criminal penalty.

### A. Retroactivity

■ The state argues that there is no retroactive application in this case. We disagree. Although the state compares this case to *State v. Yellowmexican*, 142 Ariz. 205, 688 P.2d 1097 (App.1984); *State v. Cocio*, 147 Ariz. 277, 709 P.2d 1336 (1985); and *Hinson v. Coulter*, 150 Ariz. 306, 723 P.2d 655 (1986), those cases are significantly different. While each of them concerned the impact of a recidivist sentence enhancement statute upon defendants whose prior (enhancing) convictions occurred before the statute's effective date, in each case the defendant's *current* offense was committed after the statute's effective date. As the court in *Yellowmexican* explained: "The punishment imposed under [the sentence enhancement statute] is based on the [current conviction]. It does not increase the penalty for the prior convictions. In fact, except for the [current] conviction, there would be no punishment beyond that originally imposed for the first [offenses]." 142 Ariz. at 207, 688 P.2d at 1099.

Here, by contrast, defendant was subjected to the registration statute for crimes that he committed before that statute's effective date. The retroactivity requirement of *ex post facto* analysis is met.

### B. Increased Burden of Punishment

The second requirement is that the statute make more burdensome the punishment for a crime. This, the Supreme Court has held, comports with the original understanding of the *ex post facto* clause. *Collins v. Youngblood*, 110 S.Ct. at 2719 (citing *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (opinion of Chase, J.)).

■ We examine in part C of this opinion whether § 13–3821 imposes a criminal penalty. It is clear, however, that the statute makes more burdensome the sentences of those to whom it applies.

First, anyone sentenced under § 13–3821 must register as a sex offender and carry that "badge of infamy." *Cf. Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) (posting of name of person who was forbidden to consume alcoholic beverages for one year because of "excessive drinking" constituted a "badge of infamy" and an "official branding" that triggered procedural due process protections); *see also In re Reed*, 33 Cal.3d 914, 920, 663 P.2d 216, 218, 191 Cal.Rptr. 658, 660 (1983) (quoting *In re Birch*, 10 Cal.3d 314, 515 P.2d 12, 110 Cal.Rptr. 212 (1973)) (sex offender registrants carry an "ignominious badge"). This disability has no expiration date; the registration requirement of § 13–3821 attaches for a lifetime. *See State v. Lammie*, 164 Ariz. 377, 793 P.2d 134 (App.1990).

We recognize that registration documents filed under § 3821 are not disseminated to the general public; a registrant's statement, photograph, and fingerprints are available only to law enforcement personnel and selected others. Ariz.Rev.Stat. Ann. § 13–3823. These others, however, include governmental licensing and regulatory agencies for use in evaluating the fitness of prospective employees and licensees. *Id.* § 41–1750(B)(8)–(9) (Supp.1990). They also include employers, potential employers, and volunteer youth-serving agencies if the victim of the underlying sexual offense was a minor and the registrant's employment or volunteer activity would place him in regular contact with minors under fifteen years of age. Ariz.Rev.Stat. Ann. § 41–1750(B)(11) (Supp.1990). This defined circle of access is sufficiently widespread in our view to constitute a substantial burden on the registrant.

A second burden flows predictably from the requirement of registration. Among the large group of ex-convicts, the registrant is defined as a member of a small and more notorious group more likely to be questioned and investigated when local sex crimes occur. *See In re Reed*, 33 Cal.3d at 660, 663 P.2d at 218, 191 Cal.Rptr. at 920 (quoting Kaus & Mallen, *The Misguiding Hand of Counsel—Reflections on "Crimi-*

*nal Malpractice"*, 21 UCLA L.Rev. 1191, 1222 (1974)) (Registration, "if it serves its purpose, presumably means a series of command performances at lineups.").

These additional burdens are imposed upon sentencing under § 13–3821 and satisfy the second step of *ex post facto* analysis.

### C. *Criminal Penalty Requirement*

The last and most difficult element of our *ex post facto* analysis is to determine whether the legislature intended the sex offender registration statute as a criminal penalty or whether, expressly or implicitly, the legislature enacted it for a civil, regulatory purpose. *Ward,* 448 U.S. at 248, 100 S.Ct. at 2641; *see also Flemming v. Nestor,* 363 U.S. 603, 616, 80 S.Ct. 1367, 1375–76, 4 L.Ed.2d 1435 (1960) (termination of Social Security benefits to some deportable aliens was constitutional because it was not imposed for a penal purpose, but was incidental to Congressional power to regulate immigration).

■ We conclude that the legislature intended the sex offender registration statute as a criminal penalty. First, the statute is codified with Arizona's criminal code in Title 13 of the Arizona Revised Statutes. Second, for those convicted of sexual offenses in Arizona, the statute operates upon a finding of guilt at sentencing. *See State v. Lammie,* 164 Ariz. 377, 793 P.2d 134 (App.1990). Third, the statute is implicitly penal because of its breadth. The legislature presumably acted in part for the regulatory purpose to facilitate apprehension of those who commit highly recidivist sexual offenses. However, the registration statute applies to all sexual offenses, including such situational and often victimless [2] misdemeanors as adultery, sodomy, lewd and lascivious acts, and open and notorious cohabitation. *See* Ariz.Rev.Stat. Ann. §§ 13–1408, 13–1409, 13–1411, 13–1412 (1989). Moreover, the requirement applies even to those convicted of attempting a sexual offense. *State v. Lammie,* 164 Ariz. at 379, 793 P.2d at 136. The

legislature must have acted, at least in part, with penal intent when it required registration of all convicted of "sexual offenses" without distinguishing among them.

Even if we assume that the legislature was principally motivated by a regulatory purpose, however, a statute is deemed penal if sufficiently "punitive either in purpose or effect as to negate that intention." *Ward,* 448 U.S. at 248–49, 100 S.Ct. at 2641. Several factors should be considered to determine whether a law's punitive effect negates an otherwise regulatory purpose. *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 169, 83 S.Ct. 554, 568, 9 L.Ed.2d 644 (1963). These factors are not an exhaustive listing; nor is any one factor dispositive. *Ward,* 448 U.S. at 249, 100 S.Ct. at 2641–42. The factors are:

> whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned....

372 U.S. at 168–69, 83 S.Ct. at 567–68 (citations and footnotes omitted).

The Arizona sex offender registration statute imposes affirmative disabilities or restraints on a registrant, which we have described in part B of this opinion. These disabilities impair employability, subject registrants to increased police scrutiny, and last for life.

It is arguable whether § 13–3821 falls within a category of laws traditionally considered punishment. Exposure in perpetuity serves as punishment in some traditions. *See* N. Hawthorne, *The Scarlet Letter* (1850). However, disclosure under

---

**2.** *See State v. Bateman,* 113 Ariz. 107, 547 P.2d 6 (1976) (the crimes of sodomy and lewd and lascivious acts may be committed by married persons or consenting adults; consent is no defense).

§ 13–3821 is confined to those described above.

Registration clearly applies only on a finding of *scienter*, binding only those found guilty of all elements of a crime including the requisite mental state.

Registration further is intended to promote deterrence, listed in *Mendoza–Martinez* as a traditional aim of punishment. One statutory purpose is undoubtedly to reduce recidivism, and a law aimed at reducing repetitive offenses is intended to deter crime. This court recognized the statute's deterrent purpose in *Lammie*, stating:

> Registration for lifetime places a defendant on notice that when subsequent sexual crimes are committed in the area where he lives, he will be subject to investigation. This may well have a prophylactic effect, deterring him from future sexual crimes.

164 Ariz. at 382, 793 P.2d at 139.

The complementary regulatory purpose to facilitate law enforcement may also be assigned the statute. *Id.* at 382–83, 739 P.2d at 139–40 ("Furthermore, [registration] is a proper tool to be given to police officers for use in investigating criminal offenses."). However, for reasons previously indicated, the provision sweeps more broadly than would serve this purpose alone. Section 13–3821 requires registration for a lifetime and applies to all sexual offenses, including open and notorious cohabitation, sodomy, adultery, and lewd and lascivious acts.[3] Registration of those convicted of committing or attempting these misdemeanor offenses, regardless of circumstances or severity, bears no rational relationship to the purpose of facilitating apprehension of repeat offenders. In the words of *Mendoza–Martinez*, the statute's breadth "appears excessive" in relation to that end.

In this quality of punitive breadth beyond its regulatory scope, § 13–3821 may be distinguished from statutes that have withstood *ex post facto* analysis despite retroactively increasing the burden on persons convicted of a crime. For example, in *De Veau v. Braisted*, 363 U.S. 144, 160, 80 S.Ct. 1146, 1154–55, 4 L.Ed.2d 1109 (1960), the Supreme Court approved retroactive legislation that barred convicted felons from waterfront union office. This restriction was not ineradicable; the statute exempted those who had been pardoned or had "received a certificate of good conduct from the board of parole...." *Id.* at 145, 80 S.Ct. at 1147. The Supreme Court concluded that this was a non-punitive and reasonable means for achieving the legitimate state aim of "eliminating corruption on the waterfront." *Id.* at 157, 80 S.Ct. at 1153.

The breadth of § 13–3821 is also highlighted by comparison with the Illinois Habitual Child Sex Offender Registration Act, Ill.Ann.Stat., ch. 38, pars. 221–29 (Smith–Hurd 1990). That statute has been recently construed as regulatory, not penal, by an Illinois appellate court, but is narrowly focused, as its title suggests. *See People v. Adams*, 198 Ill.App.3d 74, 144 Ill.Dec. 402, 555 N.E.2d 761, *appeal allowed*, 133 Ill.2d 560, 149 Ill.Dec. 325, 561 N.E.2d 695 (1990). The Illinois statute requires registration only of those convicted of certain designated offenses—criminal sexual assault, aggravated criminal sexual assault, criminal sexual abuse, or aggravated criminal sexual abuse—and further requires that the offense be a second offense, a felony, and against a victim under 18 years of age. Moreover, under the Illinois statute, only authorized law enforcement officers may inspect sex offender registration data, and the unauthorized release of that data is a misdemeanor. Ill.Ann.Stat., ch. 38, par. 229 (Smith–Hurd 1990).

---

**3.** We decline to assume that the statutes proscribing these offenses are nullities, unintended for enforcement. The statutes concerning adultery and open and notorious cohabitation were amended in 1977, and the statutes concerning lewd and lascivious behavior and sodomy (still statutorily denoted as "the infamous crime against nature") were amended as recently as 1985. If the legislature deemed these offenses nullities, it would presumably have repealed the statutes that make them crimes, rather than including them as predicate offenses for lifetime registration under § 13–3821.

The breadth of § 13–3821 is also highlighted by comparison with Ariz.Rev.Stat. Ann. § 41–1750(B)(11) (Supp.1990). In that narrowly drawn and primarily regulatory statute, the legislature made registrants' records accessible, if their victims were minors, to employers or volunteer agencies at which a registrant might have regular contact with minors under fifteen years of age. *Id.* In § 13–3821, by contrast, the legislature drafted broadly, imposing registration as a component of the sentence for all sexual offenses. Sections 13–3821 and 41–1750(B)(11) are so closely related that we must construe the former as deliberate in its significantly broader sweep.

Indeed, in *Lammie* this court attributed dispositive significance to the deliberate breadth of § 13–3821:

> In former A.R.S. § 13–3821, the legislature expressly listed every sex crime requiring registration. In adopting A.R.S. § 13–3821 in 1983, the legislature did *not* list any specific crime or crimes. We conclude that the legislature, by adopting the broad language of A.R.S. § 13–3821, did *not* intend to exclude attempted sexual offenses.

164 Ariz. at 379, 793 P.2d at 136 (emphasis in original).

In summary, we do not pretend that Arizona's sex offender registration statute is wholly punitive, nor that it is wholly lacking in regulatory intent. As the Supreme Court recognized in *Mendoza–Martinez,* the enumerated factors "often point in differing directions." 372 U.S. at 169, 83 S.Ct. at 568. *See also Matter of Appeal in Maricopa Juvenile Action No. J–92130,* 139 Ariz. 170, 677 P.2d 943 (App.1984) (although a statute requiring monetary assessments and restitution orders in juvenile cases was recognized to serve the non-punitive, regulatory purposes of rehabilitation and restitution, it was held to be sufficiently penal to foreclose retroactive application). On balance, however, we conclude that § 13–3821 is sufficiently penal, both in

intent and in effect, to overcome any corresponding regulatory, nonpunitive intent.

Our conclusion is supported by the California Supreme Court's decision in *In re Reed,* 33 Cal.3d 914, 663 P.2d 216, 191 Cal.Rptr. 658 (1983). In *Reed,* the California Supreme Court held that the California sex offender registration requirement constituted punishment for purposes of the cruel or unusual punishment provision of the California Constitution.[4] The *Reed* court applied the factors enumerated by the U.S. Supreme Court in *Mendoza–Martinez,* much as we have applied them here, to determine that the statute was penal in nature.

## CONCLUSION

■ Because § 13–3821 is a criminal penalty, applies to defendant retroactively, and imposes increased burdens on defendant, its application to defendant violates the *ex post facto* clause of the Arizona Constitution.

We have reviewed all other aspects of these proceedings for fundamental error and found none. Accordingly, we reverse only that part of defendant's sentence requiring him to register under Ariz.Rev. Stat.Ann. § 13–3821. The judgment and sentence of the trial court are otherwise affirmed.

GERBER and EUBANK, JJ., concur.

---

**4.** This court held in *Lammie* that imposition of the Arizona sex offender registration requirement on those convicted of an attempted sexual offense is not cruel and unusual punishment under the Arizona and United States Constitu-

tions. 164 Ariz. at 377, 793 P.2d at 139. In *Lammie,* the court assumed, but did not decide, that the registration provision was a criminal penalty. *See id.*