829 P.2d 1217

STATE of Arizona, Appellee,

v.

Michael Brown NOBLE, Appellant.

No. CR–91–0049–PR.

Supreme Court of Arizona,
En Banc.

April 21, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, R. Wayne Ford, Crane McClennen, Asst. Attys. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Carol A. Carrigan, Deputy County Public Defenders, Phoenix, for appellant.

## OPINION

FELDMAN, Chief Justice.

Michael Brown Noble and Lawrence R. McCuin were separately convicted of various sex offenses. We consolidated their cases for argument and granted review to determine whether the statute requiring them to register as sex offenders violates the *ex post facto* clause of the United States and Arizona Constitutions when applied to offenses committed before its enactment. We have jurisdiction pursuant to article 6, § 5(3) of the Arizona Constitution and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

Noble pleaded guilty in 1988 to charges of child molestation and sexual conduct with a minor. The crimes were committed in 1981 and 1982. He was sentenced to consecutive aggravated terms of eleven years on the first count and twelve years on the second count. In addition, the trial judge ordered him to register as a sex offender, pursuant to A.R.S. § 13–3821,[1]

---

1. Section 13–3821 provides in pertinent part:

A. A person who has been convicted of a violation of chapter 14 or 35.1 of this title or who has been convicted of an offense committed in another state which if committed in this state would be a violation of chapter 14 or 35.1 of this title shall, within thirty days after the conviction or within thirty days after entering any county in this state for the purpose of residing or setting up a temporary domicile for thirty days or more, register with the sheriff of the county in which he resides or sets up temporary domicile.

B. At the time of registering, the person shall sign a statement in writing giving such information as required by the director of the department of public safety. The sheriff shall fingerprint and photograph the person and within three days thereafter shall send copies of the statement, fingerprints and photographs to the criminal identification section within the department of public safety and the chief of police, if any, of the place where the person resides.

C. The clerk of the superior court in the county in which a person has been convicted of a violation of chapter 14 or 35.1 of this title shall notify the sheriff in that county of the conviction within thirty days after entry of the judgment.

which became effective on July 27, 1983.[2] The court of appeals held that the application of the registration requirement to crimes predating its enactment violates the *ex post facto* clause of the Arizona Constitution. *State v. Noble*, 167 Ariz. 440, 808 P.2d 325 (Ct.App.1990).

McCuin pleaded guilty in 1988 to two counts of sexual conduct with a minor for conduct occurring in 1981. He was sentenced to an aggravated term of fourteen years on one count, and received a suspended sentence and a concurrent probationary term of seven years on the other count. As a term of his probation, the court required him to register as a sex offender under § 13–3821. On appeal, a different panel of the court of appeals held, with one judge dissenting, that requiring McCuin to register as a sex offender for offenses committed before the enactment of § 13–3821 did not violate the *ex post facto* clause. *State v. McCuin*, 167 Ariz. 447, 808 P.2d 332 (Ct.App.1991). We granted review in both cases to resolve the conflict between these two decisions.

## DISCUSSION

Noble and McCuin both claim that requiring them to register as sex offenders under a statute that had not yet been enacted at the time they committed their offenses violates the prohibition against *ex post facto* laws of both the Arizona and federal constitutions.

■ The *ex post facto* clause of the Arizona Constitution is similar to that found in the United States Constitution.[3] *State v. Yellowmexican*, 142 Ariz. 205, 206–07, 688 P.2d 1097, 1098–99 (Ct.App.1984), *adopted and approved*, 142 Ariz. 91, 688 P.2d 983 (1984). We ordinarily interpret the scope of a clause in the Arizona Constitution sim-

ilarly to the United States Supreme Court's interpretation of an identical clause in the federal constitution. *But see Pool v. Superior Court*, 139 Ariz. 98, 108, 677 P.2d 261, 271 (1984) (while we give great weight to the decisions of the United States Supreme Court, "we cannot and should not follow federal precedent blindly."). In this instance, we believe that the cases interpreting the *ex post facto* clause of the federal constitution provide a useful analytical framework for interpreting our own *ex post facto* clause. In addition, this court has consistently followed federal precedent in this area. *See, e.g., State v. Correll*, 148 Ariz. 468, 481–82, 715 P.2d 721, 734–35 (1986) (applying analysis of *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) and *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *In re Appeal in Maricopa County Juvenile Action No. J–92130*, 139 Ariz. 170, 677 P.2d 943 (1984) (applying *Weaver* analysis and other federal precedent).[4] We begin, therefore, with the seminal United States Supreme Court case, *Calder v. Bull.*

### A. The *Calder* Categories

In *Calder v. Bull*, the United States Supreme Court held that the *ex post facto* clause prohibited

1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. *Every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed.* 4th. Every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time

---

2. Laws 1983, ch. 202, § 13. An earlier version of § 13–3821 was repealed as of October 1, 1978 by Laws 1978, ch. 201, § 242.

3. The Arizona Constitution provides that "[n]o ... ex-post-facto law ... shall ever be enacted." Ariz. Const. art. 2, § 25. The United States Constitution provides that "[n]o State shall ... pass any ... ex post facto Law...." U.S. Const. art. 1, § 10.

4. Because we have concluded that the analysis under both constitutions is the same, we need not consider the fact that both Noble and McCuin apparently alleged violations of only the Arizona Constitution in the court of appeals, but have alleged violations of both the Arizona and federal constitutions on review.

of the commission of the offence, in order to convict the offender.

3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (opinion of Chase, J.) (emphasis added). In *Beazell v. Ohio,* the Court explained that

> [t]he constitutional prohibition and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused.

269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925).

In other cases, the Court has suggested that the *ex post facto* clause prohibited a broader range of statutory application. In one case, for example, the Court expressed the view that the *Calder* categories are not exclusive, quoting a jury instruction providing that "an *ex post facto* law is one which, in its operation, makes that criminal which was not so at the time the action was performed, or which increases the punishment, *or, in short, which, in relation to the offense or its consequences, alters the situation of a party to his disadvantage.*" *Kring v. Missouri,* 107 U.S. 221, 228–29, 2 S.Ct. 443, 449, 27 L.Ed. 506 (1883) (quoting *United States v. Hall,* 26 F.Cas. 84, 86 (C.C.D.Pa.1809) (No. 15,285), *aff'd,* 10 U.S. (6 Cranch) 171, 3 L.Ed. 189 (1810)).

The Court put any doubt regarding the exclusivity of the *Calder* categories to rest when it expressly overruled *Kring. Collins v. Youngblood,* 497 U.S. 37, ——, 110 S.Ct. 2715, 2723, 111 L.Ed.2d 30 (1990). The Court explained that

> [t]he holding in *Kring* can only be justified if the *Ex Post Facto* Clause is thought to include not merely the *Calder* categories, but *any* change which "alters the situation of a party to his disadvantage." We think such a reading of the Clause departs from the meaning of the Clause as it was understood at the time

of the adoption of the Constitution, and is not supported by later cases.

*Id.* (emphasis added). We therefore confine our analysis to the *Calder* categories.

Only one *Calder* category is relevant to the instant case. The application of § 13–3821 to Noble and McCuin violates the *ex post facto* clause only if it is a "law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed." *Calder,* 3 U.S. (3 Dall.) at 390; *see also State v. Cocio,* 147 Ariz. 277, 284, 709 P.2d 1336, 1343 (1985) ("the Arizona Legislature may not enact a law which imposes any additional or increased penalty for a crime after its commission").

■ As a threshold matter, we must determine whether the statute is retrospectively applied to Noble and McCuin. "A law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quoting *Weaver,* 450 U.S. at 31, 101 S.Ct. at 965); *see also Yellowmexican,* 142 Ariz. at 207, 688 P.2d at 1099 (a law is retroactive if it "appl[ies] to events occurring before its enactment"). The state claims that § 13–3821 is not retrospectively applied because the registration requirement is triggered by conviction rather than by the commission of the sexual offense, and Noble and McCuin were actually convicted after the enactment of the statute. We disagree. Retrospective application of a statute altering the mandatory sentence for an offense, even if the defendant was convicted after the new sentencing statute was enacted, is directly contrary to a primary purpose of the *ex post facto* clause—"to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver,* 450 U.S. at 28–29, 101 S.Ct. at 964.

Nor is there any question that, by burdening Noble and McCuin with the registration requirement, the retrospective application of the statute altered the situation to their disadvantage. *Compare Miller,* 482 U.S. at 432–33, 107 S.Ct. at 2452

(change in sentencing guidelines disadvantaged petitioner, despite fact that he could not show he would otherwise have received lesser sentence, because it foreclosed his ability to challenge the imposition of a sentence longer than presumptive sentence under old law) *with Dobbert v. Florida*, 432 U.S. 282, 296–97, 97 S.Ct. 2290, 2300, 53 L.Ed.2d 344 (1977) ("totality of the procedural changes wrought by the new statute ... did not work an onerous application of an *ex post facto* change in the law").

Accordingly, the sole question we must decide is whether registration under § 13–3821 constitutes punishment.

**B. Is the Registration Requirement Punishment?**

■ To determine whether the registration requirement is punitive or regulatory, we look first to "whether the legislative aim was to punish [an] individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation." *De Veau v. Braisted*, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109 (1960). If the legislative aim was punitive, we treat the registration requirement as a punishment. If, on the other hand, the legislature indicated a non-punitive purpose, we must "inquire[ ] further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention." *United States v. Ward*, 448 U.S. 242, 250, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980) (citing *Flemming v. Nestor*, 363 U.S. 603, 617–21, 80 S.Ct. 1367, 1376–78, 4 L.Ed.2d 1435 (1960)).[5]

The legislative history[6] behind § 13–3821 does not indicate whether the statute was intended to be punitive or regulatory. Consequently, we turn to the factors enumerated in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 169, 83 S.Ct. 554, 568, 9 L.Ed.2d 644 (1963) ("Absent conclusive evidence of [legislative] intent as to the penal nature of a statute, these factors must be considered in relation to the statute on its face.").[7] The *Mendoza-Martinez* factors are

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned....

*Mendoza-Martinez*, 372 U.S. at 168–69, 83 S.Ct. at 567–68 (footnotes omitted).

**1. Application of the Mendoza-Martinez Factors**

■ Both panels of the court of appeals applied the *Mendoza-Martinez* factors. The panel in *Noble* held that § 13–3821 constituted punishment under *Mendoza-Martinez;* the panel in *McCuin* held that it did not. Both opinions are well-reasoned and persuasive. Because they reach opposite results, however, we conduct our own analysis of the relevant *Mendoza-Martinez* factors. These factors focus appropriate attention on the effects of the registration requirement on convicted sex offenders and on the rationality between the requirement and its purported non-punitive function. *See generally* Maria Foscarinis, Note, *Toward a Constitutional Definition*

---

5. *See also United States v. Constantine*, 296 U.S. 287, 294, 56 S.Ct. 223, 226, 80 L.Ed. 233 (1935) ("If in reality a penalty [for violating state law] it cannot be converted into a tax by so naming it, and we must ascribe to it the character disclosed by its purpose and operation, regardless of name.").

6. *Sexual Offenses: Minutes of Hearing on H.B. 2147 Before the House Human Resources Comm.*, 36th Leg., 1st Sess. 3 (March 8, 1983);

*Sexual Offenses: Minutes of Hearing on H.B. 2147 Before the House Judiciary Comm.*, 36th Leg., 1st Sess. 4–5 (March 7, 1983).

7. *See In re Reed*, 33 Cal.3d 914, 920–23, 663 P.2d 216, 218–20, 191 Cal.Rptr. 658, 660–62 (1983) (applying *Mendoza-Martinez* factors in determining that sex offender registration is cruel and unusual punishment).

*of Punishment,* 80 Colum.L.Rev. 1667, 1670–77 (1980).

#### a. *Registration as an Affirmative Disability or Restraint*

In *Noble,* the court of appeals found that the registration statute imposes an affirmative disability or restraint because registration "impair[s] employability, subject[s] registrants to increased police scrutiny, and last[s] for life." 167 Ariz. at 444, 808 P.2d at 329. These results occur because the registration documents are available not only to law enforcement officials, but also to "employers, potential employers and volunteer youth-serving agencies if the victim of the underlying offense was a minor and the registrant's employment or volunteer activity would place him in regular contact with minors under fifteen years of age." *Id.* at 443, 808 P.2d at 328; *see* A.R.S. § 41–1750(B)(11).

In *McCuin,* on the other hand, the court of appeals found that the registration requirement "does not *affirmatively* inhibit or restrain an offender's movement or activities." 167 Ariz. at 454, 808 P.2d at 339 (emphasis added). We agree. The registration information may in some circumstances be available to potential employers and government agencies not involved in law enforcement. The information is only available, however, in statutorily specified circumstances where it serves a clearly regulatory purpose. A.R.S. § 41–1750(B).[8] At most, the requirement allows employers and social service agencies in certain sensitive areas, as well as governmental licensing agencies, to take the offender's record of conviction into account in rendering decisions on matters to which the offender's record is relevant. Furthermore, these employers and agencies *already* have access under § 41–1750(B) to the offender's conviction record, which includes the fact of the conviction along with identifying information. *See* A.R.S. § 41–1750(B); Rule

37.1(a), Ariz.R.Crim.P., 17 A.R.S. (requiring convicting court to report "the final disposition of the case ... to the criminal identification section of the Department of Public Safety if the defendant was incarcerated or fingerprinted as a result of the charge") (hereinafter Rule 37.1(a)).

The registration requirement's marginal impact on the information available to non-law enforcement personnel is not "the kind of affirmative disability or restraint usually associated with criminal punishment." *McCuin,* 167 Ariz. at 454, 808 P.2d at 339. *Cf. Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 18 L.Ed. 356 (1866) (Missouri constitutional provision disqualifying person from ministry, teaching, law practice, and other callings operated to impose additional punishment for past crimes).

#### b. *Registration Historically Regarded as Punishment*

In *Noble* the court decided that being perpetually identified as a sex offender could be considered punishment, but that the statutory limitations on access to the registration information alleviate the damaging impact of such exposure. 167 Ariz. at 444–45, 808 P.2d at 329–30 (using Nathaniel Hawthorne's *The Scarlet Letter* (1850) as an example). The court in *McCuin,* in contrast, concluded that registration "simply has not traditionally or historically been regarded as a punishment." 167 Ariz. at 454, 808 P.2d at 339. Registration has been "a traditional governmental method of regulating the activities or conduct of a particular group," including convicted felons. *Id.*

We agree with the *Noble* court that registration has traditionally been viewed as punitive. The California Supreme Court has described sex offender registration as an "ignominious badge." *In re Birch,* 10 Cal.3d 314, 322, 515 P.2d 12, 17, 110 Cal. Rptr. 212, 217 (1973). And the United States Supreme Court, in holding that a

---

**8.** The information may be released to: noncriminal justice agencies for evaluating prospective employees, public officials, or volunteers; governmental licensing agencies for evaluating prospective licensees; prospective employers and volunteer youth-service agencies whose activi-
ties involve regular contact with minors; and the department of economic security and the superior court for determining the fitness of prospective custodians of juveniles. A.R.S. § 41–1750(B)(8), (9), (11), (13).

sentence of permanent government surveillance was cruel and unusual punishment, described the convict as

> forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicil without giving notice to the 'authority immediately in charge of his surveillance,' and without permission in writing. He may not seek, even in other scenes and among other people, to retrieve his fall from rectitude. Even that hope is taken from him, and he is subject to tormenting regulations that, if not so tangible as iron bars and stone walls, oppress as much by their continuity, and deprive of essential liberty.

*Weems v. United States,* 217 U.S. 349, 366, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910). We also agree with *Noble,* however, that the provisions in the statute limiting access to the registration information significantly dampen its stigmatic effect. *Noble,* 167 Ariz. at 443, 808 P.2d at 328; *see* A.R.S. §§ 13–3823 (access to records), 41–1750(B) (same). As we have already noted, much of the information that convicted sex offenders must provide under § 13–3821 is available through § 41–1750 and Rule 37.-1(a) independent of the registration statute.

### c. Traditional Aims of Punishment

The registration requirement serves, at least in part, the traditional deterrent function of punishment, the notion being that a convicted sex offender is less likely to commit a subsequent offense if his whereabouts are easily ascertained by law enforcement officials. *See State v. Lammie,* 164 Ariz. 377, 382, 793 P.2d 134, 139 (Ct. App.1990) ("Registration for lifetime places a defendant on notice that when subsequent sexual crimes are committed in the area where he lives, he will be subject to investigation. This may well have a prophylactic effect, deterring him from future sexual crimes.").

### d. Registration Is Not Excessive in Relation to Non–Punitive Purpose

In both *Noble* and *McCuin,* the court of appeals found that the registration requirement was rationally related to an alternative, non-punitive purpose: facilitating law enforcement by aiding in investigative work. *Noble,* 167 Ariz. at 445, 808 P.2d at 330; *McCuin,* 167 Ariz. at 455, 808 P.2d at 340. We agree that the registration requirement serves a regulatory purpose. Registration is "a valuable tool in the hands of the police, because it gives them a current record of the identity and location of ex-felons." *Atteberry v. State,* 84 Nev. 213, 438 P.2d 789, 791 (1968); *see also Lammie,* 164 Ariz. at 382–83, 793 P.2d at 139–40; *People v. Adams,* 581 N.E.2d 637, 640 (Ill.1991) ("The Registration Act was designed to aid law enforcement agencies. With the registration requirement, the habitual offender's address is readily available to law enforcement agencies, which may then question and, if necessary, detain him under appropriate circumstances.").

The *Noble* court expressed concern that convicted sex offenders, by being required to register, would be burdened by being "defined as a member of a small and ... notorious group more likely to be questioned and investigated when local sex crimes occur." 167 Ariz. at 443, 808 P.2d at 328. Registration assists law enforcement officers in locating past sex offenders when new crimes are committed, but registration does not, and could not, diminish registrants' general right to be free from unconstitutional law enforcement practices. Absent evidence linking a particular registrant to a crime sufficient to establish individualized reasonable suspicion or probable cause, a registrant could not be detained or arrested for questioning. The registration information could properly be used, on the other hand, to locate past offenders during the course of developing investigative leads, and to facilitate apprehension once there is probable cause to arrest a specific registrant.[9]

---

9. *See In re Reed,* 33 Cal.3d 914, 929, 663 P.2d 216, 224, 191 Cal.Rptr. 658, 666 (1983) (Richardson, J., dissenting) ("The registration laws require neither arrest nor detention. They do aid in assuring that, once cause to detain or arrest is shown, the suspect may be located without

Furthermore, the registration requirement, as applied to child sex offenders, is not excessive in relation to its non-punitive, law enforcement purpose. Although the court of appeals in *Noble*, in contrast, held that the scope of the requirement is excessive because it applies equally to anyone convicted of *any* sex offense, including cohabitation, sodomy, adultery, and lewd and lascivious conduct, 167 Ariz. at 445, 808 P.2d at 330, our inquiry is more narrow. We need not decide whether the registration requirement would constitute punishment if applied to offenders convicted of other offenses for which the threat of recidivism may possibly be less significant or for which registration may have no valid regulatory purpose. With respect to the offenses of child molestation and sexual misconduct with a minor, however, the registration requirement is not excessive given the assistance it provides to law enforcement agencies in investigating future offenses and the importance of locating and apprehending recidivists.[10]

### 2. *Balancing the Mendoza–Martinez Factors*

We acknowledge that § 13–3821 has both punitive and regulatory effects. *See Trop v. Dulles*, 356 U.S. 86, 96, 78 S.Ct. 590, 596, 2 L.Ed.2d 630 (1958) ("The Court has recognized that any statute decreeing some adversity as a consequence of certain conduct may have both a penal and a nonpenal effect."). Moreover, we agree with *Noble* that the *Mendoza–Martinez* factors point "in differing directions." 167 Ariz. at 446, 808 P.2d at 331 (quoting *Mendoza–Martinez*, 372 U.S. at 169, 83 S.Ct. at 568). Although several of the *Mendoza–Martinez* factors suggest that § 13–3821 is punitive, our task is not simply to count the factors on each side, but to weigh them.

The most significant factor in this case is our determination that, as noted, the over-riding purpose of § 13–3821 is facilitating the location of child sex offenders by law enforcement personnel, a purpose unrelated to punishing Noble and McCuin for past offenses. In addition, potentially punitive aspects of the statute have been mitigated. Registrants are not forced to display a scarlet letter to the world; outside of a few regulatory exceptions, the information provided by sex offenders pursuant to the registration statute is kept confidential. *See supra* note 8 and accompanying text.

Our decision is close. We nonetheless conclude that, on balance, requiring convicted sex offenders to register pursuant to § 13–3821 is not punishment. Consequently, the retrospective application of the statute to these defendants does not violate the *ex post facto* clause of the United States or Arizona Constitution.

### CONCLUSION

Arizona's sex offender registration statute, A.R.S. § 13–3821, is regulatory in nature and not an unconstitutional *ex post facto* law when applied to these defendants convicted after the enactment of the statute for offenses predating the enactment of the statute. The court of appeals' opinion in *State v. Noble* is vacated, and the superior court's order that Noble register pursuant to § 13–3821 is affirmed. The disposition of McCuin's case is contained in a separate opinion at 171 Ariz. 171, 829 P.2d 1217 (1992).

MOELLER, V.C.J., CORCORAN, J., FRANK X. GORDON, J. (retired), and JAMES C. CARRUTH, Superior Court Judge.

JAMES DUKE CAMERON, J. (retired), did not participate in this matter; pursuant to article 6, § 3 of the Arizona Constitution, JAMES C. CARRUTH, Superior Court

---

undue effort."); *Adams*, 581 N.E.2d at 641 ("the registrant's constitutional safeguards will still be in place to protect him from unwarranted police harassment").

**10.** *See generally* Joseph Romero & Linda Meyer Williams, *Recidivism Among Convicted Sex Offenders: A 10–Year Followup Study*, 49 Fed.Pro-bation 58 (1985); Kenneth Gray & Johann Mohr, *Follow–Up of Male Sex Offenders*, in Sexual Behavior and the Law 742 (Ralph Slovenko ed. 1965); A. Nicholas Groth *et al.*, *Undetected Recidivism Among Rapists and Child Molesters*, 28 Crime and Delinq. 450 (1982).