[No. 28128-3-I.    Division One.    August 31, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL
E. TAYLOR, *Appellant*.

_Fred Diamondstone,_ for appellant.

_Norm Maleng, Prosecuting Attorney,_ and _Barbara Linde, Deputy,_ for respondent.

SCHOLFIELD, J. — At a bench trial on October 16 and 17, 1990, the court convicted Michael Taylor of attempted indecent liberties, and sentenced him on February 28, 1991, to 180 days' confinement and 24 months of community supervision.[1]

On March 11, 1991, the Superior Court informed Taylor of the requirement, under RCW 9A.44.130, that he register as a sex offender with the sheriff in the county in which he would be living.

Taylor appeals the requirement that he register as a sex offender, contending that RCW 9A.44.130 violates the ex post facto clauses of our federal and state constitutions. We reject his contention and affirm.

Taylor's offense was committed November 25, 1989. RCW 9A.44.130 was enacted and made effective February 28, 1990. To apply the registration requirements of that statute to Taylor requires giving the statute retrospective application.

Const. art. 1, § 23 provides:

> No bill of attainder, ex post facto law, or law impairing the obligations of contracts shall ever be passed.

---

[1]A recitation of the facts of the offense is unnecessary to a consideration of the issue raised in this appeal.

U.S. Const. art. 1, § 10 provides:

No state shall . . . pass any . . . ex post facto law . . ..

There is no suggestion here that analysis under both constitutions should not be the same.

RCW 9A.44.130 requires all persons residing in Washington who have been convicted of any sex offense to register with the county sheriff for the county of the person's residence, providing his or her name, address, place of employment, crime for which convicted, date and place of conviction, aliases used, and social security number. The statute requires that the sheriff be notified when the person changes his or her address or moves to another county. The sheriff is directed to obtain a photograph of the person and a copy of his or her fingerprints.

The statute sets time limits on the registration requirements and also provides an escape clause whereunder a person required to register can petition the superior court, which is empowered to relieve a person from the duty to register upon a clear and convincing showing that registration will not serve the intended purposes of the legislation.

The registration statute places no restriction on the dissemination of the information by the sheriff or on the use the sheriff can make of it. However, in connection with the registration statute, the Legislature made a policy finding as follows:

The legislature finds that sex offenders often pose a high risk of reoffense, and that law enforcement's efforts to protect their communities, conduct investigations, and quickly apprehend offenders who commit sex offenses, are impaired by the lack of information available to law enforcement agencies about convicted sex offenders who live within the law enforcement agency's jurisdiction. Therefore, this state's policy is to assist local law enforcement agencies' efforts to protect their communities by regulating sex offenders by requiring sex offenders to register with local law enforcement agencies as provided in section 402 of this act [RCW 9A.44.130].

Laws of 1990, ch. 3, § 401, p. 49.

Taylor contends that the requirement to register operates to his disadvantage to such an extent that it is in effect an

additional punishment, the retrospective application of which violates the ex post facto prohibition, and is therefore unconstitutional.

The State contends that the statute's purpose is regulatory, rather than punitive, and that unless it has the effect of imposing additional punishment, it does not violate the prohibition against ex post facto laws.

■ The prohibition against ex post facto laws assures that persons are given fair warning of the meaning of legislative acts and permit individuals to rely upon their meaning until explicitly changed. *Weaver v. Graham*, 450 U.S. 24, 28-29, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981).

In the early case of *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648 (1798), the United States Supreme Court defined ex post facto laws as follows:

> 1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal ; and punishes such action. 2d. Every law that *aggravates a crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.*

(Italics ours.)

In cases following *Calder*, the United States Supreme Court appeared to expand the definition of ex post facto laws by including law which "*in relation to the offence or its consequences, alters the situation of a party to his disadvantage.*'" *Kring v. Missouri*, 107 U.S. 221, 228-29, 27 L. Ed. 506, 2 S. Ct. 443 (1882).

In *Thompson v. Utah*, 170 U.S. 343, 352, 42 L. Ed. 1061, 18 S. Ct. 620 (1898), the Court held that a change in Utah law reducing the size of juries in criminal cases from 12 persons to 8 deprived Thompson of "a substantial right involved in his liberty" and violated the ex post facto clause.

■ In *Collins v. Youngblood*, 497 U.S. 37, 111 L. Ed. 2d 30, 110 S. Ct. 2715 (1990), the Court held that cases such as

*Kring* and *Thompson* departed from the meaning of the ex post facto clause at the adoption of the constitution, and overruled both cases. The effect of the opinion in *Collins v. Young-blood, supra,* was to reestablish the *Calder* categories as the controlling definition of an ex post facto law. In doing so, the Court rejected including in ex post facto laws those which did no more than materially alter the situation to the disadvantage of the defendant, and went back to the requirement that the law be one which increases the punishment for a crime.

In *In re Powell,* 117 Wn.2d 175, 814 P.2d 635 (1991), the court addressed a claim that Laws of 1989, ch. 259 (SHB 1457) violated our ex post facto clause. The statute requires that a minimum sentence which generally conforms to Sentencing Reform Act of 1981 criteria be set for inmates who are serving mandatory life sentences for crimes committed prior to July 1, 1984. The petitioners argued that SHB 1457 extended the time to be served before a life inmate could be eligible for parole.

Under prior law, a life inmate needed to be certified by the prison superintendent as eligible for parole before the Board of Prison Terms and Paroles could even consider parole. This certification was purely discretionary and could be withheld indefinitely. SHB 1457 removed the requirement of superintendent certification and made all inmates subject to parole consideration. The court held that removing the certification requirement had an ameliorative effect and that SHB 1457 was not an ex post facto law as applied to inmates who had not been certified prior to enactment of SHB 1457.

The court held SHB 1457 was an ex post facto law as to an inmate (Thompson) who was certified as parolable prior to passage of SHB 1457. ·

At page 185, the *Powell* court stated:

A law violates the ex post facto clause if it: (1) is substantive, as opposed to merely procedural; (2) is retrospective (applies to events which occurred before its enactment);· and (3) disadvantages the person affected by it. *See Weaver v. Graham, supra* at 29; *Collins v. Youngblood,* [497] U.S. [37], 111 L. Ed. 2d 30, 110 S. Ct. 2715 (1990).

In using the language "disadvantages the person affected by it", the court arguably suggests that nothing more is necessary in order to have an ex post facto law violation than a substantive law given retrospective application which works to the disadvantage of an individual. The court cited *Weaver v. Graham, supra,* and *Collins v. Youngblood, supra,* in support of the "disadvantage" language. However, in *Collins,* the United States Supreme Court expressly rejected the "disadvantage" concept in favor of the requirement from *Calder* that an ex post facto law, among other requirements, must increase or enhance punishment.

A review of the *Powell* opinion makes it reasonably clear that the court did not intend to rule contrary to the holding in *Collins.* The *Powell* court stated in the opinion at page 188:

> The threshold question in determining whether a law which affects parole is disadvantageous to prisoners is whether the law alters the "standard of punishment" which existed under prior law.

We proceed, therefore, to the question of whether the registration act is regulatory rather than punitive, and if it has aspects of both, whether the punitive aspects are so burdensome as to amount to a violation of the prohibition of ex post facto laws.

In addressing the issue, we find *State v. Noble,* 171 Ariz. 171, 829 P.2d 1217 (1992) instructive. In *Noble,* the Supreme Court of Arizona cited *Calder v. Bull, supra* and *Collins v. Youngblood, supra,* and concluded that if the challenged law requiring registration of sex offenders was an ex post facto law, it would be because its application "*changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed.*" *Noble,* 829 P.2d at 1219 (quoting *Calder,* 3 U.S. (3 Dall.) at 390).

The *Noble* court acknowledged that the registration requirement altered the situation to Noble's disadvantage. The court then addressed the same issue we address in this opinion, which is whether the law is punitive or regulatory.

■ The *Noble* court stressed the significance of expressed legislative intent, but noted that the legislative history of the Arizona statute gave no indication as to whether the statute was intended to be regulatory or punitive. The court then turned to the factors listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 9 L. Ed. 2d 644, 83 S. Ct. 554 (1963) to be used in the absence of conclusive legislative intent to determine whether a statute is regulatory or punitive. The *Noble* court listed these factors as follows:

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment — retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned. . . .

*Noble*, 829 P.2d at 1221 (quoting *Mendoza-Martinez*, 372 U.S. at 168-69).

The *Noble* court concluded that the registration act did not affirmatively inhibit or restrain an offender's movements or activities; that some courts have viewed registration acts as punishment; that registration will have some deterrent effect; that the registration requirement served a regulatory purpose; and that it was not excessive in relation to its nonpunitive, law enforcement purposes. The court concluded that the registration requirement was not punishment.

The Washington and Arizona acts are not comparable in all respects. The Arizona act, for example, limits the dissemination of the information to certain entities, while the Washington act has no such limitation.

The principal arguments made to support the conclusion the Washington statute is primarily punitive are that it can have the effect of restricting change of residence, can diminish chances of employment, will make the registrant a suspect in every reported sexual offense, and will have an overall stigmatic effect greater than would otherwise exist.

■ The Washington Legislature endorsed the statute with a clear statement of a regulatory purpose in assisting law enforcement agencies in protecting their communities by making available useful information regarding known sex offenders. The question is whether the effect of the statute is so punitive as to override the intended regulatory purpose. We hold it is not.

Much of the information required by the statute is public information generally available to interested persons who make a reasonable effort to obtain it. The fact of a registrant's conviction, the nature of the crime, and when and where the conviction took place are all matters of public record. Law enforcement agencies and prospective employers could in given cases obtain the information without the assistance of a registration statute. In employment situations, the information can often be obtained from the applicant.

The requirement that the sheriff be kept informed of the registrant's current residence address does not impede or restrict movement in any way. The registrant is free to move wherever and as often as desired.

Deterrence is a traditional purpose of punishment. While a registrant may be deterred from committing another crime after registration, he may also be deterred just from the fact of conviction and punishment suffered, whether he is required to register or not. Furthermore, there is no indication deterrence is an intended purpose of the registration statute. Any additional deterrent effect caused by the registration would be incidental and minimal. It falls far short of the effect needed to convert an intended regulation into additional punishment.

There is a stigma attached to one who has committed a sexual offense. It stems from the fact of conviction and is not something that can be easily concealed once the offender has been released from custody. To the extent that registration makes it likely more persons will learn of the conviction, it is unlikely that the additional dissemination of

the information brought about by registration will significantly increase the stigmatic effect over what it would be absent any registration requirement.

While a known sex offender living in a community where another sex offense occurs may well be a suspect, he has all of the due process and constitutional protections enjoyed by any other citizen and cannot be arrested simply because of his past conviction.

We conclude that while registration is disadvantageous to a registrant, the disadvantages are relatively minor and are not sufficient as to make the registration statute punitive in overall effect. We conclude it is a regulatory statute, which does not violate the prohibition against ex post facto laws.

Judgment affirmed.

PEKELIS, J., concurs.


AGID, J. (dissenting) — I agree with the majority that the correct test for determining whether a new enactment is an ex post facto law is the test set forth in *Collins v. Youngblood*, 497 U.S. 37, 111 L. Ed. 2d 30, 110 S. Ct. 2715 (1990), despite some indication to the contrary in *In re Powell*, 117 Wn.2d 175, 185, 814 P.2d 635 (1991). However, I agree with Taylor that RCW 9A.44.130 is, as a practical matter, additional punishment. I would therefore hold that it cannot be applied to him or other similarly situated persons convicted of sex offenses prior to the effective date of the statute.

The sole argument Taylor advances here is that the sex offending registration law is an ex post facto law because it inflicts greater punishment on him. As the court in *State v. Noble*, 171 Ariz. 171, 829 P.2d 1217 (1992) recognized, a new law that "will promote the traditional aims of punishment — retribution and deterrence" may not be applied retroactively. *Noble*, 829 P.2d at 1221. The problem with the majority's analysis is that, in rejecting Taylor's argument, it ignores the very real practical impacts of the registration requirement. Those impacts convert the registration requirement

from a regulation into a law designed to further "the traditional aims of punishment — retribution and deterrence".

One such impact is that all of the registration information is readily available to *anyone* — not just a limited group of entities with a need to know, as was the case in the Arizona statute upheld in *Noble*. The mere fact that bits and pieces of the information appear in various public records does not answer the concern that, through registration, a sex offender is denied privacy rights such as an unlisted telephone number and address that other convicted felons enjoy. A person or group wishing to find and publicize the location of sex offenders in a given community would have ready access to all the necessary information. Such efforts are commonly reported in the news media and add immeasurably to the "stigma attached to one who has committed a sexual offense." Majority, at 357.

I agree that a registered offender "has all of the due process and constitutional protections enjoyed by any other citizen and cannot be arrested *simply* because of his past conviction." (Italics mine.) Majority, at 358. However, that conclusion ignores the very frightening and often disabling impact on an individual when official suspicion is focused on him or her. One who is watched, investigated, questioned and accused, albeit informally, lives in fear of the moment of formal accusation and its aftermath. People tend to think that if he did it once, he will do it again. The recognition of this human trait underlies former ER 404(b) prohibiting the use of evidence of other crimes "to prove the character of a person in order to show that he acted in conformity therewith." It is unrealistic to assume that because a registered offender cannot be *arrested* without probable cause, he will not be the focus of prearrest suspicion and investigation when information about him and his prior crime is readily available.

Finally, it seems obvious that the registration requirement, again as a practical matter, will impede the constitutionally protected right to travel. *See Shapiro v. Thompson,*

394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969), *overruled on other grounds in Edelman v. Jordan*, 415 U.S. 651, 671, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974). In *Shapiro*, the Supreme Court held that the right to travel was protected by the fifth and fourteenth amendments to the United States Constitution. The Court invalidated state laws conditioning eligibility for welfare benefits on residency for 1 year in the state on the ground that such a requirement has a chilling effect on that right. 394 U.S. at 631. While a registered sex offender, like the welfare recipients in *Shapiro*, is not barred at the gates of a new community, the requirement that he register, like the residency requirement invalidated in *Shapiro*, surely will have a chilling effect on his freedom of choice to move to a new place. It is inconceivable to think that one who must, as his first act, go to local law enforcement and announce that he is a felon convicted of a sex offense will not be deterred from moving in order to avoid divulging that ignominious event.

While I agree that RCW 9A.44.130 has a significant regulatory purpose, I do not think we can ignore the very real punitive impacts of the law in deciding whether it may be retroactively applied. Where, as here, punishment is a very significant aspect of the law in addition to regulation, we should hold that its application to Taylor is prohibited because it is an ex post facto law.

Review by Supreme Court pending November 1, 1993.